PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA GARCIA, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>BUILD.COM, INC., a California corporation, and DOES 1 through 10, inclusive,<br><br>  Defendants. | Case No.  3:22-cv-01985-DMS-KSC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br>**(1) PENAL CODE § 631; AND**<br>**(2) PENAL CODE § 632.7** |

## INTRODUCTION

Defendant Build.com, Inc. ("Defendant") secretly enables and allows a third-party to wiretap and eavesdrop upon the private conversations of everyone who communicates through the chat feature at www.build.com (the "Website"). The spyware company then exploits and monetizes that data by sharing it with other third parties who use the private chat data to bombard the unsuspecting visitor with targeted marketing.

Defendant does this without visitors' informed consent. As such, Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*

## JURISDICTION AND VENUE

1. Plaintiff Silvia Garcia ("Plaintiff") does not dispute Defendant's grounds for removal and the propriety of this Court's jurisdiction and venue pursuant to 28 U.S.C. §§ 1332(a), 1441, 1446, and 1453.

## PARTIES

2. Plaintiff is a resident of California. Within the last year and while physically within California, Plaintiff visited Defendant's Website using a smart phone and conducted a brief conversation through the Website's chat feature. Plaintiff was not advised that the chat was monitored, intercepted, or recorded, nor did she consent thereto.

3. Defendant is an online home improvement retailer that operates an e-commerce website home improvement store that sells to consumers throughout the United States.

4. Defendant also owns, operates, and/or controls the Website, which at relevant times, offered an online "chat" feature for consumers to communicate directly with Defendant through the Website.

## FACTUAL ALLEGATIONS

**A. Background of CIPA.**

5.     CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. "'[T]he right to control the nature and extent of the firsthand dissemination of [one's] statements'" is viewed by the California Supreme Court "as critical to the purposes of Section 631[.]" *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985)); *Ribas*, 38 Cal. 3d at 360-61 ("a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device"). "[U]nder Section 631, it has always mattered who is holding the tape recorder[.]" *Javier*, 2023 WL 114225, at *6.

6.     Compliance with CIPA is easy, and most website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.[1]

7.     Unlike most companies, Defendant *ignores* CIPA. Instead, Defendant enables and allows a third party that has no corporate affiliation with Defendant to eavesdrop on all such conversations. Why? Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight to make informed business decisions. . . .***When people are chatting, you have direct access to their exact pain points.**"). See https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited Jul. 14, 2023) (emphasis added).

8.     Defendant's actions are not incidental to facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, as noted above,

---

[1]     https://www.leechtishman.com/insights/blog/the-california-invasion-of-privacy-act-californias-wiretap-act/ ("*[C]ompliance [with CIPA] is not difficult. A business must take certain steps, as part of its privacy program, to ensure that **any time the business is gathering**, either automatically, or **with a chat feature**, personal data of a consumer/website visitor, **that it obtains valid consent consistent with the holdings and determinations of the courts interpreting CIPA** and other applicable Data Privacy laws.*") (last visited Jul. 14, 2023) (emphasis added).

Defendant's actions violate industry norms and the legitimate, reasonable expectations of consumers.

### B.     Defendant Allows Salesforce to Intercept Consumers' Chats During Transmission Through Its Chat Feature.

9.      To enable eavesdropping, Defendant has allowed a third party, Salesforce, to embed its chat technology code into the chat feature offered on Defendant's Website. Indeed, whenever a consumer chats via Defendant's Website, the chat is routed *through* Salesforce's servers so they may simultaneously collect a transcript of that chat, along with other user data, in real time and save it for later access.

10.     Salesforce's product, Salesforce Live Agent, is a type of automatic routing software that automatically acquires and transmits user chat communications to Salesforce without any active input from either Defendant's employees, agents, or human representatives.  Salesforce Live Agent acquires Website visitors' chat communications by first having its software to route them to Salesforce's own computer servers that it owns, controls, and maintains.  The secret code enables and allows Salesforce to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications they *think* they are having with Defendant, even when such conversations are private and contain personally identifiable information ("PII") – as Plaintiff's did.  Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

11.     Indeed, Salesforce admits that it receives and records chat transcripts. According to Salesforce, the Live Agent tool that Defendant utilizes automatically creates a transcript that is stored by Salesforce in a SQL database that allows any user to access the transcript and associate it with particular customers, cases, accounts, contacts, and leads. *See* https://help.salesforce.com/s/articleView?id=sf.live_agent_chat_transcripts.htm&type=5 ("*A chat transcript is a record of a chat between a customer and an agent.*

*Salesforce automatically creates a transcript for each chat session.*") (last visited Jul. 14, 2023).

14. One might reasonably wonder why Salesforce would be interested in intercepting and recording the Website chat interactions between Defendant and unsuspecting visitors to Defendant's Website. As shown below, it all about money.

15. Salesforce partners boasts that the Salesforce Live Agent suite of products is integrated with social media platforms like Meta/Facebook and can become a "lead generation machine." *See* https://tray.io/blog/facebook-lead-ads-salesforce (*"What if you could effortlessly sync Facebook lead ads and Salesforce in real time? An integration between Facebook lead ads and Salesforce can help you create a lead generation machine that saves your marketing team valuable time, automates advertising insights to increase return on ad spend (ROAS), and gives your sales team the power to follow up faster—and ultimately win more deals. In this guide, we'll break down how to set up a Salesforce-Facebook integration of your own, as well as share a few common use cases.*") (last visited Jul. 14, 2023).

16. Defendant has synched its chat feature with Facebook. The integration allows various software sub-systems to share data to operate as a unified system. According to Bloomberg.com, this is all part of Meta's secret "plan to profit from private chats." *See* https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-deal-after-regulatory-review (last visited Jul 14, 2023) (emphasis added). As Bloomberg explained, Meta's software integration "can manage customer messages from multiple services on one central dashboard. That's central to Meta's plan to make money off of its two messaging apps, WhatsApp and Messenger." (*Id.*)

17. So how does it work? First, Meta identifies "user interests" by monitoring a collection of "offsite" user activity such as website visits and interactions (including private chat communications between Defendant and visitors) by "integrating" its software with Salesforce Live Agent. Second, Meta generates revenue by selling advertising space through its subsidiaries' ability to identify those offsite user interests.

1  Third and finally, after the chat transcripts intercepted by Salesforce are provided to
2  Meta through "integration", Meta brands like Facebook and WhatsApp bombard the
3  unsuspecting Website visitors with targeted advertising based upon the user's Website
4  visits and interactions.

5  18.  Through the preceding acts, Meta subsidiaries can freely boast that they
6  can "Transform your support center into a profit generator by bulk messaging specific
7  customer segments based on your unique data…to reengage dissatisfied customers."
8  *See e.g.,* https://www.kustomer.com/product/customer-service/ (last visited July 2023).
9  Indeed, all of the schemers – Defendant, Salesforce, and Meta – profit from secretly
10 exploiting the chat data through targeted social media advertising because "*Targeted*
11 *advertising allows brands to send different messaging to different consumers based on*
12 *what the brand knows about the customer. The better a brand can demonstrate that it*
13 *understands what its customers want and need, the more likely customers respond to*
14 *advertising and engage with the brand…. Social media targeting helps brands leverage*
15 *consumers' behavior on the web, search engines, and social media sites to present ads*
16 *that reflect consumer interests.*"  See https://www.adroll.com/blog/what-is-targeted-
17 advertising#:~:text=Targeted%20advertising%20allows%20brands%20to,and%20enga
18 ge%20with%20the%20brand (last visited Jul. 14, 2023).

19 19.  As such, Salesforce does more than merely provide a storage function for
20 Website users' chat communications with Defendant.  It is more than the proverbial
21 "tape-recorder" in the hand of Defendant.  Instead, Salesforce uses its record of Website
22 users' interaction with Defendant's chat feature for data analytics and
23 marketing/advertising to consumers – indeed, that is why Defendant pays Salesforce for
24 its software.

25 20.  Salesforce's exploitation, monetization, use of, and interaction with the
26 data it gathers through the chat feature on Defendant's Website in real time makes it a
27 third-party interceptor and eavesdropper known to and enabled by Defendant under

CIPA, rather than a mere extension of Defendant and/or party to the communication with Website visitors.

21. Given the nature of Defendant's business, visitors often share personal and/or confidential data, in addition to personally identifying information, with Defendant via the Website chat feature. Plaintiff did so.

22. Defendant did not inform Class members that Defendant was secretly allowing, aiding, and abetting Salesforce to intercept and eavesdrop on the conversations during transmission, or that Salesforce provided data from such transcripts to Meta and similar entities through "integration" of their softwares.

23. Defendant did not obtain Plaintiff's or the Class members' effective consent for the preceding intrusions, nor did Plaintiff or Class members know at the time of the conversations of Defendant's conduct.

## CLASS ALLEGATIONS

26. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons within the state of California who: (1) communicated with Defendant via the chat feature on Defendant's Website; and (2) whose communications were recorded and/or eavesdropped upon without prior effective consent.**

27. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the tens of thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

28. COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

a. Whether Defendant caused Plaintiff's and the Class's electronic communications with the Website to be recorded, intercepted and/or monitored;

b. Whether Defendant aided and abetted the third party in eavesdropping on such communications;

c. Whether Defendant violated CIPA based thereon;

d. Whether Plaintiff and Class Members are entitled to punitive damages pursuant to Cal. Civil Code § 3294; and

e. Whether Plaintiff and Class Members are entitled to injunctive relief.

29. <u>TYPICALITY</u>: As a person who visited Defendant's Website and had her electronic communications recorded, intercepted and monitored, Plaintiff is asserting claims that are typical to the Class.

30. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

31. <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## CAUSE OF ACTION
## Violations of the California Invasion of Privacy Act
## Cal. Penal Code § 631(a)

32. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

33. "Any person who, by means of any machine, instrument, or contrivance, or in any other manner,… [ii] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [iii] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [iv] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine . . . ." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (Holcomb, J.) (line breaks and headings of clauses added for ease of reference) (quoting Cal. Penal Code § 631(a)).

34. Section 631(a) of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.'" *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022); *Yoon*, 549 F. Supp. 3d at 1080 ("Courts agree … that CIPA § 631 applies to communications conducted over the internet.") (citing *Matera v. Google Inc.*, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (Koh, J.) (holding that second clause of section 631(a) "encompasses email communications, which pass over wires, lines, or cables")); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ("the Court finds that section 631 of CIPA applies to emails"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020) (Labson Freeman, J.).

35. Salesforce's software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument,

- 9 -
FIRST AMENDED CLASS ACTION COMPLAINT                                    3:22-cv-01985-DMS-KSC

contrivance, or … other manner" used to engage in the prohibited conduct alleged herein. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) (stating that "***it is undeniable that a computer may qualify as a 'machine'***" within the meaning of section 631(a)) (emphasis added), *aff'd in part and rev'd in part on other grounds*, 956 F.3d 589 (9th Cir. 2020).

36. At all relevant times, Defendant intentionally caused the internet communication between Plaintiff and Class members with Defendant's Website to be recorded. Defendant also aided and abetted, agreed with, employed, or conspired with Salesforce to wiretap and/or eavesdrop upon such conversations during transmission and in real time by voluntarily embedding Salesforce Live Agent software code on Defendant's Website.

37. Defendant knows that Salesforce, through software, captures the electronic communications of visitors to Defendant's Website, and pays it to conduct these activities.

38. Plaintiff and Class members did not expressly or impliedly consent to any of Defendant's or Salesforce's actions.

39. In a materially identical case, a court recently held that the above-described allegations state viable claims for violations of section 631(a) of CIPA. *See Byars v. The Goodyear Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ("*Byars contends that Goodyear, using a third-party service, "intercepts in real time" a website visitors' chat conversation. . . . Byars alleges that, using the chat conversation, website visitors share sensitive personal information. . . . . Because Byars has pled sufficient facts to show the contents of the communications and that the communications were intercepted, Byars has sufficiently stated a claim under § 631(a).*") (emphasis added).

40. Defendant's conduct violates Cal. Penal Code § 631(a), entitling Plaintiff and/or Class members to injunctive relief and statutory damages.

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;
2. An order declaring Defendant's conduct violates CIPA;
3. An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;
4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;
5. Statutory damages pursuant to CIPA;
6. Punitive damages;
7. Prejudgment interest;
8. Reasonable attorneys' fees and costs; and
9. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated: July 17, 2023                    PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2023, I electronically filed the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell