# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA GARCIA, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br>v.<br>BUILD.COM, INC., and DOES 1–10, inclusive,<br><br>                                      Defendants. | Case No.: 22-cv-1985-DMS-KSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Pending before the Court is Defendant's motion to dismiss. Based on her interactions with the chat feature on Build.com's website, Plaintiff Silvia Garcia ("Plaintiff" or "Garcia") alleges on behalf of herself and all others similarly situated that Defendant Build.com, Inc. ("Defendant") violated Cal. Penal Code § 631(a), Clause Four. For the reasons explained below, the Court grants Defendant's motion to dismiss.

## I.    BACKGROUND

### A. Factual Allegations

Defendant Build.com is "an online home improvement retailer" that operates an e-commerce website, www.build.com ("Website"). (Def.'s Mot. to Dismiss ("Def.'s Mem.") at 7, ECF No. 26.) The website includes a chat feature which allows customers to ask questions about Build.com's products and services. (*Id.*) At some point between July–

November 2022, she visited the Build.com website on her smartphone. (*See* First Am. Compl. ("FAC") ¶ 2, ECF No. 20; Compl. ¶ 18, ECF No. 1, Ex. A.) When she visited the website, she initiated a chat conversation with Defendant in which she disclosed personally identifiable information. (FAC ¶¶ 2, 10.) Plaintiff alleges she "was not advised that the chat was monitored, intercepted, or recorded" and did not "consent thereto." (*Id.* ¶ 2.)

Plaintiff alleges that Defendant "has allowed a third party, Salesforce, to embed its chat technology code into the chat feature" on the Build.com website. (*Id.* ¶ 9.) Plaintiff explains that Salesforce's "Live Agent" product "acquires . . . chat communications by first having its software . . . route them to Salesforce's own computer servers that it owns, controls, and maintains." (*Id.* ¶ 10.) Accordingly, Salesforce has the capability to "secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications." (*Id.*) Plaintiff further alleges that Defendant "has synched its chat feature with Facebook." (*Id.* ¶ 16.) "The integration allows various software sub-systems to share data to operate as a unified system" and "is all part of Meta's secret 'plan to profit from private chats.'" (*Id.*, quoting Kurt Wagner, *Meta Closes $1 Billion Kustomer Deal After Regulatory Review*, Bloomberg (Feb. 15, 2022, 1:30 PM), https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-deal-after-regulatory-review.) Plaintiff explains:

> First, Meta identifies "user interests" by monitoring a collection of "offsite" user activity such as website visits and interactions (including private chat communications between Defendant and visitors) by "integrating" its software with Salesforce Live Agent. Second, Meta generates revenue by selling advertising space through its subsidiaries' ability to identify those offsite user interests. Third and finally, after the chat transcripts intercepted by Salesforce are provided to Meta through "integration," Meta brands like Facebook and WhatsApp bombard the unsuspecting Website visitors with targeted advertising based upon the user's Website visits and interactions.

(FAC ¶ 17.) According to Plaintiff, "[a]s such, Salesforce does more than merely provide a storage function for Website users' chat communications with Defendant," but also uses the chat transcript data it collects "for data analytics and marketing/advertising to

2

consumers." (*Id.* ¶ 19.) "Salesforce's exploitation, monetization, use of, and interaction with the data it gathers through the chat feature on Defendant's Website in real time," therefore, "makes it a third-party interceptor and eavesdropper known to and enabled by Defendant." (*Id.* ¶ 20.) Salesforce is not a party to this suit.

Plaintiff further alleges that Defendant did not inform Class members that Defendant "secretly allow[ed], aid[ed], and abet[ed]" Salesforce to intercept and eavesdrop on their conversations, or that Salesforce "provided data from such transcripts to Meta and similar entities through 'integration' of their softwares." (*Id.* ¶ 22.) "Given the nature of Defendant's business, visitors often share personal and/or confidential data, in addition to personally identifying information, with Defendant via the Website chat feature." (*Id.* ¶ 21.) Defendant did not obtain Plaintiff's or the Class members' consent for such intrusions, and Plaintiff and Class members did not know at the time they engaged in chat communications on the Website. (*Id.* ¶ 23.)

**B. Procedural History**

Plaintiff filed the original complaint in this action on November 17, 2022, which Defendant removed to this federal court on December 14, 2022, and raised two claims based on violations of two provisions of the California Invasion of Privacy Act (CIPA), Cal. Penal Code §§ 631(a), 632.7. (*See generally* Compl.; Notice of Removal, ECF No. 1.) Specifically, in Count One, Plaintiff alleged that Defendant violated all four clauses of CIPA § 631(a), Cal. Penal Code § 631(a), and in Count Two, Plaintiff alleged that Defendant violated CIPA § 632.7, Cal. Penal Code § 632.7. (*See generally* Compl.) On July 13, 2023, this Court dismissed the original complaint in its entirety. (Order dated July 13, 2023 ("Order"), at 12.) The Court found that Plaintiffs failed to allege an aiding-abetting claim under CIPA § 631(a), Clause Four, because Plaintiffs had not "plausibly allege[d] the existence of a third-party eavesdropper," or alternatively, because Plaintiffs had not alleged that the third-party eavesdropper had "intercepted and used the data" for its own purposes and that Defendant aided and abetted such conduct. (*Id.* at 9–10.) The Court dismissed the Clause Four claim with leave to amend because it concluded that

amendment would not be futile. The Court dismissed all other claims and theories with prejudice. (*Id.* at 10, 12.)

Plaintiff filed the operative FAC on July 17, 2023. Defendant filed its motion to dismiss on August 30, 2023. (Def.'s Mot., ECF No. 26.) Plaintiff filed a response in opposition on September 29, 2023.[1] (Pl.'s Opp'n, ECF No. 28.) On October 6, 2023, Defendant replied in support of its motion to dismiss, (Def.'s Reply, ECF No. 29), and the Court took this matter under submission without oral argument, *see* S.D. Cal. Civ. L.R. 7.1(d)(1). Plaintiff filed two notices of supplemental authority on October 17, 2023, (ECF No. 31), and November 6, 2023, (ECF No. 32). On November 7, 2023, Defendant responded to the notices. (ECF No. 33.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged"

---

[1] The Court grants Plaintiff's concurrently filed request for the Court to take judicial notice of state court orders, (ECF No. 28-1), which are public records. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute" if "it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

her "claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no (1) "undue delay," (2) "bad faith or dilatory motive," (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007). "Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . ." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

### III.   DISCUSSION

Plaintiff again fails to state a claim because she fails to plausibly allege the existence of a third-party eavesdropper or that Plaintiff aided and abetted any such eavesdropper. Section 631(a) makes actionable "three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Super. Ct. of San Diego Cnty.*, 22 Cal. 3d 187, 192 (1978). Section 631 also imposes liability upon "anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' . . . three bases for

liability." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting Cal. Penal Code § 631(a)). Specifically, Section 631(a) makes liable any person

> [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
> [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
> [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or
> [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . .

Cal. Penal Code § 631(a).

Plaintiff's sole surviving claim in the operative FAC is an aiding and abetting claim under Clause Four. "To state a claim under [Clause Four], Plaintiff must allege [the third-party service] has violated one of the first three clauses of section 631(a), and that Defendant aided, agreed with, employed, or conspired with that person or entity to commit those unlawful acts." *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-102 DMS, 2024 WL 559241, at *2 (S.D. Cal. Feb. 12, 2024). Defendant argues that Plaintiff's attempt to replead a Clause Four claim fails for two reasons: (1) the FAC fails to plausibly allege the existence of a third-party eavesdropper because it only added more speculative and conclusory allegations; and (2) even if the FAC alleged a third-party "eavesdropper," it failed to plausibly allege a predicate violation that Defendant could have aided and abetted. (Def.'s Mot. at 10–11, 15.) Plaintiff responds that it has plausibly alleged the existence of a third-party eavesdropper as well as a predicate violation. (Pl.'s Opp'n at 2.) The Court addresses these arguments below.

/ / /

### A. Existence of Third-Party Eavesdropper

In its order dismissing the original Complaint, the Court explained:

> Plaintiff alleges "Defendant allow[ed] at least one independent third-party vendor . . . to use a software device or contrivance to secretly intercept . . ., eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors." (Compl. ¶ 12.) This claim fails because the Complaint does not plausibly allege the existence of a third-party eavesdropper. Plaintiff speculates that the eavesdropper may be WhosOn or SalesForce, (see id.), but such a speculative, "'naked assertion,' devoid of 'further factual enhancement'" cannot plausibly allege the existence of a third-party eavesdropper. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

(Order at 9.) In the FAC, Plaintiff now alleges:

> Defendant has allowed a third party, Salesforce, to embed its chat technology code into the chat feature offered on Defendant's Website. Indeed, whenever a consumer chats via Defendant's Website, the chat is routed through Salesforce's servers so they may simultaneously collect a transcript of that chat, along with other user data, in real time and save it for later access.

(FAC ¶ 9.) All that has changed is Plaintiff now definitively names Salesforce as the third-party eavesdropper. But the amended allegation suffers from the same deficiency the Court originally identified—it is still a conclusory, "naked assertion" lacking any factual enhancement and fails to plausibly allege the existence of a third-party eavesdropper. *Twombly*, 550 U.S. at 557. Plaintiff does not explain the basis for her belief that Defendant employs a third-party vendor to capture and store chat transcripts for its own use or how she identified Salesforce specifically as that third-party vendor.

Moreover, Defendant correctly notes that the newly added paragraphs in the FAC do not state any facts about Build.com or the chat function. The new allegations suggest that Meta offers technologies that integrate Meta products into customer relationship management software and allow businesses to better manage the leads generated from ad campaigns. (FAC ¶ 15–16.) But Plaintiff offers no facts suggesting that Build.com itself has such an integration with Meta. Plaintiff's allegations—that Defendant has allowed Salesforce "to embed its chat technology" within Defendant's chat feature in order to

1  eavesdrop on chat conversation, and that Defendant shares chat data with Meta—are not
2  "entitled to the presumption of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011);
3  *see Iqbal*, 556 U.S. at 680–81 ("bare assertion[]" that defendants "knew of, condoned, and
4  willfully and maliciously agreed to subject" plaintiff to "harsh conditions of confinement
5  'as a matter of policy, solely on account of [his] religion, race, and/or national origin'" was
6  "conclusory and not entitled to be assumed true").  Accordingly, Plaintiff has failed to
7  plausibly allege a third-party eavesdropper that Defendant aided and abetted.

8     **B. Predicate Violations of Third-Party Eavesdropper**

9     Alternatively, even if the FAC alleges the existence of a third-party "eavesdropper,"
10 Plaintiff fails to plausibly allege that the third-party committed any predicate violation
11 which Defendant aided and abetted.

12     1. Section 631(a), Clause One

13     As noted, Plaintiff alleges the underlying third-party wrongdoer in this case is
14 Salesforce.  To show that Salesforce violated Section 631(a), Clause One, Plaintiff must
15 allege Salesforce intentionally tapped or made an unauthorized connection "with any
16 telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or
17 instrument of any internal telephonic communication system[.]" Cal. Penal Code § 631(a).
18 Defendant argues the use of a chat feature on a website does not meet the "telegraph or
19 telephone" element of this claim, and therefore, Plaintiff cannot show a violation of Clause
20 One.  (Def.'s Mot. at 16.)  Plaintiff disagrees and asserts that Clause One applies to
21 communications via smartphone.  (Pl.'s Opp'n at 16–18.)

22     In *Valenzuela v. Keurig Green Mountain*, Inc., --- F. Supp. 3d ----, No. 22-CV-9042-
23 JSC, 2023 WL 3707181, at *2 (N.D. Cal. May 24, 2023), a case based on similar facts and
24 filed by Plaintiff's counsel in this case, the court addressed the same arguments raised here,
25 and concluded, based on the plain language of the statute, that the statute did not apply "to
26 technologies other than telegraphs and telephones."  This Court has followed *Valenzuela*'s
27 reasoning in earlier cases and does so again here. *See UAG Escondido*, 2024 WL 559241,
28 at *2 (finding *Valenzuela*'s reasoning persuasive and adopting its reasoning).  The Court

therefore concludes that Clause One does not apply to internet communications at issue here. Accordingly, Plaintiff has failed to plausibly allege a predicate Clause One violation.

2. <u>Section 631(a), Clause Two</u>

To show that Salesforce violated Clause Two, Plaintiff must allege facts demonstrating that Salesforce

> willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[ed] to read, or to learn the contents or meaning of any message, report, or communication while the same [was] in transit or passing over any wire, line, or cable, or [was] being sent from, or received at any place within this state . . . .

Cal. Penal Code § 631(a). Defendant argues Plaintiff cannot state a claim under Clause Two because (a) Plaintiff consented to the recording of her chat messages with Defendant, (b) any alleged use of a recording software fell within the "party exception" and was not actionable, and (c) Plaintiff has failed to allege facts to support the "in transit" requirement of Clause Two. (Def.'s Mot. at 16–24.) Plaintiff responds that (a) she did not consent to Salesforce recording her conversation with Defendant, (b) the alleged use of third-party recording software falls outside of the party exception, and (c) she alleged sufficient facts to support the "in transit" requirement, and that she alleged her communications were sent from California, which also satisfies this element.

CIPA contains "an exemption from liability for a person who is a 'party' to the communication" because such parties cannot eavesdrop on their own conversation. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020); *see Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("It is never a secret to one party to a conversation that the other party is listening . . . ."). Courts in California "are split on whether this exemption extends to third parties, particularly, third party software providers." *UAG Escondido*, 2024 WL 559241, at *4. "The first set of cases holds that software providers . . . are third parties within the meaning of Section 631 and *Ribas*." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899 (N.D. Cal. 2023) (citing *Ribas v. Clark*, 38 Cal. 3d 355, 358, 360–61 (1985) (wife's friend listening in on wife's conversation with her former

husband (Ribas) at wife's invitation was eavesdropper under CIPA § 631)). "The second set of cases, led by . . . *Graham v. Noom*, holds that software vendors . . . are 'extension[s]' of the websites that employ them, and thus not third parties within the meaning of the statute." *Id.* (citing *Graham v. Noom*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021)). The *Graham* court reasoned that the software vendor, FullStory, "provide[d] a tool—like [a] tape recorder … —that allow[ed] Noom to record and analyze its own data in aid of Noom's business," and thus was "not a third-party eavesdropper" under the statute. *Graham*, 533 F. Supp. 3d at 832–33.

The *Javier* court aligned itself with the first set of cases and identified "two problems" with the reading of section 631(a) in the *Graham* line of cases. *Javier*, 533 F. Supp. 3d at 900.

> The first [reason] is that it interprets the second prong of the statute— "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"—based on the intentions and usage of the prospective third party.

*Id.* This interpretation would subsume Clause Three, which itself "penalizes 'use'— 'us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained.'" *Id.* (quoting Cal. Penal Code § 631(a)). In other words, "reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id.* The *Javier* court continued:

> The second problem with this view is that it was not the California Supreme Court's stated rationale in *Ribas*: The *Ribas* Court did not consider the wife's friend's intention or the use to which they put the information they obtained. Instead, it emphasized the privacy concerns at issue with having an "unannounced second auditor" listening in on the call, when Section 631 concerns "the right to control the nature and extent of the firsthand dissemination of [their] statements."

*Id.* (quoting *Ribas*, 38 Cal. 3d at 360–61). This Court has followed *Javier*'s reasoning in earlier cases and does so again here. *See UAG Escondido*, 2024 WL 559241, at *5 ("This Court finds the reasoning of . . . *Javier* persuasive, and is inclined to find that the party

exemption does not extend to third parties.").

The *Javier* court determined it could conclude that the third party was not an "unannounced second auditor" if the third party "does not have the *capability* to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of its owner)." *Javier*, 533 F. Supp. 3d at 900. "Thus, applying *Javier*, the question now is whether Plaintiff has adequately alleged that" Salesforce "has the 'capability' to use the chat data for its own purposes or benefit." *Rodriguez v. Ford Motor Co.*, No. 3:23-CV-00598-RBM, 2024 WL 1223485, at *13 (S.D. Cal. Mar. 21, 2024). For the reasons explained above, the Court concludes she has not. Here, Plaintiff has alleged:

> Defendant has allowed a third party, Salesforce, to embed its chat technology code into the chat feature offered on Defendant's Website. Indeed, whenever a consumer chats via Defendant's Website, the chat is routed through Salesforce's servers so they may simultaneously collect a transcript of that chat, along with other user data, in real time and save it for later access.

(FAC ¶ 9.) Plaintiff continues, "Defendant has synched its chat feature with Facebook. The integration allows various software sub-systems to share data to operate as a unified system." (FAC ¶ 16.) The allegation that "the chat is routed through Salesforce's servers so they may simultaneously collect a transcript of that chat," (FAC ¶ 9), "only supports the inference that" Salesforce "receives and stores these communications for the benefit of its client," Build.com, *Ford Motor*, 2024 WL 1223485, at *13. And Plaintiff's allegation that Defendant "has synched its chat feature with Facebook," (FAC ¶ 16), "is conclusory, unsupported, and insufficient," *Ford Motor*, 2024 WL 1223485, at *13. Accordingly, Plaintiff has failed to plausibly allege a predicate Clause Two violation.[2] The Court need

---

[2] The Court recognizes that this conclusion is in tension with the reasoning in *UAG Escondido*, where this same Court found that similar allegations *did* plausibly allege a predicate violation of Clause Two. 2024 WL 559241, at *5–6. However, with the benefit of the Parties' briefing on the issue, the Court is now persuaded to reach a different conclusion here. The Court also notes that its conclusion on the Clause Two party exemption issue in *UAG Escondido* was not necessary to its ultimate disposition of dismissing the case for failure to allege Defendant's intent to aid and abet. *Id.* at *6–7.

not consider Defendant's remaining arguments on consent and the "in transit" requirement.

### 3. Section 631(a), Clause Three

To show that Salesforce violated Clause Three, Plaintiff must allege facts demonstrating that Salesforce "use[d], or attempt[ed] to use, in any manner, or for any purpose, or to communicate in any way, any information" obtained as the result of a violation of the preceding clauses. Cal. Penal Code § 631. A violation of Clause Three is contingent upon a violation of Clauses One or Two. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses [of § 631(a)]. Because Plaintiffs have not done so, they have also failed to plead a violation of the third clause.") Here, Plaintiff has failed to allege a predicate violation of Clauses One or Two, so she necessarily fails to allege a predicate violation of Clause Three. Accordingly, because Plaintiff has failed to allege a predicate violation under Clauses One, Two, or Three, Plaintiff has failed to plausibly allege an aiding-abetting claim against Defendant under Clause Four.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss. Because it is not clear that amendment would be futile, the complaint is dismissed with leave to amend. Within fourteen (14) days of the date of this Order, Plaintiff may file a second amended complaint which cures the pleading deficiencies identified in this Order. Plaintiff is cautioned that if the second amended complaint fails to cure the identified deficiencies, the Court will dismiss the complaint without further leave to amend.

**IT IS SO ORDERED.**

Dated: March 29, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court